## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Melie I.,

                    Petitioner,

v.

Secretary of Homeland Security; Jefferson
Sessions, Attorney General; Scott
Baniecke, ICE Field Office Director; and
Kurt Freitag, Freeborn County Sheriff,

                    Respondents.

Case No. 18-cv-1657 (ECT/HB)

**REPORT AND RECOMMENDATION**

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Melie I.'s Motion for Emergency Preliminary Injunction [Doc. No. 17], Motion to Expedite Order to Show Cause [Doc. No. 18], and Second Amended Petition for Writ of Habeas Corpus [Doc. No. 35]. For the reasons set forth below, the Court recommends that the Second Amended Petition be granted in part and denied in part, that the motion to expedite a show cause order be denied as moot, and the motion for a preliminary injunction be denied in part and denied as moot in part.

## I.   Background

### A.   Procedural Background

Proceeding pro se, Petitioner commenced this action on June 14, 2018, by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. He filed a motion for a temporary restraining order ("TRO") on July 30, 2018 [Doc. No. 11], which this Court

recommended be denied, and which was denied.  (*See* Order at 1, Sept. 17, 2018 [Doc.

No. 30].)  Meanwhile, Petitioner filed the motion for preliminary injunction [Doc. No.

17], motion to expedite an order to show cause [Doc. No. 18], and an amended petition

[Doc. No. 24].  The Court set a briefing schedule for the motions and ordered

Respondents to show cause why the relief requested in the amended petition should not

be granted.  (*See* Order at 1, Aug. 31, 2018 [Doc. No. 27].)

　　　　Counsel for Petitioner entered an appearance two weeks after the Court's briefing

order [Doc. Nos. 29, 32] and requested leave to file a second amended petition [Doc. No.

33].  The Court granted that request, and Petitioner, through counsel, filed the Second

Amended Petition [Doc. No. 35], which is now the operative petition, on October 16,

2018.

### B.    Allegations in the Second Amended Petition

　　　　Petitioner is a citizen of Nigeria.  (Pet. ¶ 20 [Doc. No. 35].)  He was detained by

the U.S. Department of Homeland Security Immigration and Customs Enforcement

("ICE") on December 13, 2017, pursuant to 8 U.S.C. § 1226(c).  (*Id.*)  Petitioner was

charged with removability under three provisions of the Immigration and Nationality Act

("INA"): (1) termination of conditional permanent residence, under 8 U.S.C.

§ 1227(a)(1)(D)(i); (2) conviction of an aggravated felony relating to murder, rape, or

sexual abuse of a minor, under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(A); and

(3) conviction of an aggravated felony, specifically, a crime of violence, under 8 U.S.C.

§ 1227(a)(2)(A)(iii), 8 U.S.C. § 1101(a)(43)(F), and 18 U.S.C. § 16(b).  (Pet. ¶ 32.)

　　　　At an immigration hearing on September 11, 2018, the immigration judge ("IJ")

2

rejected the second and third grounds for removability but sustained the charge of removability based on termination of conditional permanent residence. (Pet. ¶ 37.) Correspondingly, the IJ found Petitioner was no longer subject to mandatory detention under § 1226(c) but was subject to detention under § 1226(a). (*Id.* ¶ 40.) The IJ held a bond hearing pursuant to § 1226(a) and denied bond on the basis that Petitioner had not sustained his burden to prove he was not a danger to the community. (*Id.*)

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal. (*Id.* ¶ 41 & Ex. B.) The BIA reasoned that the IJ properly considered Petitioner's conviction for Criminal Sex Conduct in the Third Degree–Victim Mental Impair/Helpless, the 41-month term of imprisonment that was imposed, and the statement of probable cause indicating that Petitioner had sexual intercourse with an individual who fell within a class of individuals considered mentally impaired or helpless without her consent, in determining that Petitioner was a danger to the community. (Pet. Ex. B. at 3.) Even though Petitioner's conviction was not yet final for immigration purposes, the BIA held it was appropriate to consider, given the seriousness of the offense and sentence and the recency of the charge and conviction. (*Id.*)

Petitioner has since filed for relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* ¶ 42; [*see* Doc. No. 1-1 at 21].) A hearing on that application was scheduled for November 19, 2018. (Pet. ¶ 42.)

Petitioner brings the following grounds for relief in the Second Amended Petition: (1) prolonged detention in violation of § 1226; (2) violation of due process based on

3

burden of proof; (3) violation of the Fourth Amendment; (4) violation of the Fifth

Amendment; and (5) violation of the Administrative Procedures Act.  (*Id.* ¶¶ 59–73.)

## II.    Discussion

### A.    Length of Detention

Petitioner submits that his detention has exceeded 300 days and that Respondents

have prolonged his detention unreasonably.  (Pet. ¶ 61.)

When Petitioner was taken into ICE custody in December 2017, the Attorney

General considered him subject to mandatory detention under § 1226(c) based on his

criminal conviction for an aggravated felony.  Petitioner filed a motion for a bond

redetermination, and an IJ conducted a bond hearing on March 26, 2018.  (Pet. Ex. C

(IJ Decision at 2) [Doc. No. 35-2].)  In a decision dated April 11, 2018, the IJ denied

Petitioner's request for a change in custody, finding him subject to mandatory detention

for both his conviction of an aggravated felony relating to murder, rape, or sexual abuse

of a minor, and his conviction of an aggravated felony consisting of a crime of violence.

(*Id.* at 4–7.)  The IJ also determined that even if Petitioner was not subject to mandatory

detention under § 1226(c), he was a danger to the community such that his detention

would be authorized under § 1226(a).  (*Id.* at 8 n.4.)

Six days after the IJ's decision, on April 17, 2018, the Supreme Court decided in

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), that the inclusion of the subset of

convictions under 18 U.S.C. § 16(b), known as the residual clause, within the definition

of "aggravated felony," was unconstitutionally vague.  *Id.* at 1223.  That holding negated

the basis for Petitioner's removability for having been convicted of an aggravated felony

4

in the form of a crime of violence, as authorized by 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(F), and by reference 18 U.S.C. § 16(b), but not the other two bases for removability, on which *Dimaya* had no impact.

On August 29, 2018, the BIA issued *Matter of Acosta*, 27 I. & N. Dec. 420 (BIA 2018), and determined that "a conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived." *Id.* at 432. On the date *Acosta* was issued, Petitioner's conviction was on direct appeal to the Minnesota Court of Appeals. *See State v. Ilogu*, No. A17-1602, 2018 WL 4394965 (Minn. Ct. App. Sept. 17, 2018).[1] Respondents concede that *Acosta* negated the second basis for Petitioner's removability, thereby also invalidating the basis for mandatory detention under § 1226(c). Consequently, after the *Acosta* decision, the sole remaining basis for Petitioner's removability was the termination of his conditional permanent resident status under 8 U.S.C. § 1227(a)(1)(D)(i). Mandatory detention under § 1226(c) is not authorized for that basis of removability. Rather, the statutory basis for Petitioner's detention shifted to § 1226(a). Under § 1226(a), the government may detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The

---

[1] Petitioner later filed a petition for review in the Minnesota Supreme Court, which was denied on November 27, 2018. *State v. Ilogu*, No. A17-1602 (Minn. Nov. 27, 2018). "It is settled that 'the conclusion of direct review' includes the ninety days a state court defendant has to petition the Supreme Court of the United States for a writ of certiorari." *Jihad v. Hvass*, 267 F.3d 803, 804 (8th Cir. 2001). Consequently, Petitioner's conviction is still not "final" for immigration purposes.

Attorney General has the option to detain the alien, release the alien on bond, or release the alien on "conditional parole." 8 U.S.C. § 1226(a)(1)–(2).

Days after *Acosta* was decided, on September 6, 2018, Petitioner filed a motion for a hearing and redetermination of custody. (Second Ligon Decl. ¶ 10 [Doc. No. 37].) An IJ granted the request for a hearing and redetermination but denied a change in custody status in an order issued on September 11, 2018, upon finding Petitioner dangerous under § 1226(a). (Second Ligon Decl. ¶ 11–12; Pet. Ex. I [Doc. No. 35-2].) Petitioner concedes he has received two bond hearings: one on March 26, 2018, and one on September 11, 2018. (Pet'r's Reply at 1–3 [Doc. No. 39].)

Petitioner has been detained for twelve months, first under § 1226(c) and now under § 1226(a). Section 1226(a), unlike § 1226(c), entitles an alien held during removal proceedings to a bond determination; in fact, this entitlement to a bond hearing is precisely what distinguishes § 1226(a) from § 1226(c). The Court will assume for the sake of argument that Petitioner's detention was only ever authorized by § 1226(a). And, consistent with § 1226(a), Petitioner has received a bond determination. In fact, he has received two bond hearings: the first hearing occurred in March 2018, three months after he was detained by ICE; and the second occurred in September 2018, shortly after *Acosta* was decided. Only three months have passed since the second bond hearing and the issuance of this Report and Recommendation.

When an alien detained pursuant to § 1226(a) receives a prompt bond hearing, he receives all the process to which he is entitled, and a court sitting in habeas need not conduct a reasonableness inquiry. *See Borbot v. Warden Hudson Cty. Corr. Facility*, 906

F.3d 274, 278–79 (3d Cir. 2018); *see also Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018) (noting in the context of § 1226(c) that a court should inquire into the reasonableness of continued detention "unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community") (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011)). The cases cited by Petitioner in support of his position that the Court should undertake a reasonableness inquiry are distinguishable in that they were decided in the context of § 1226(c), and the petitioner had not received a bond hearing. *See Demore v. Kim*, 538 U.S. 510, 514 (2003); *Muse*, 2018 WL 4466052, at *1–2; *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *2, 5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018); *Diop*, 656 F.3d at 233–34.

To the extent Petitioner argues that the length of his detention alone warrants a finding of unreasonableness and a remedy of conditional release, the Court disagrees.  In *Jennings v. Rodriguez*, the Supreme Court recognized that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of . . . periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary."  138 S. Ct. 830, 847 (2018).  The Court went on, "Nor does § 1226(a)'s text "even hint that the length of detention prior to a bond hearing must specifically be considered in determining whether the alien should be released."  *Id.* at 848.

In sum, Petitioner has received two bond hearings since he was detained by ICE, the most recent of which occurred three months ago. Even assuming that § 1226(a) would entitle a petitioner to successive bond hearings, the Court cannot conclude that the length of Petitioner's detention up to this point, taken alone, warrants habeas relief.

## B.    Burden of Proof

Petitioner next asserts that his continued detention violates due process because the IJ erred in placing the burden of proof on him at the bond hearings to prove his lack of dangerousness. He argues that the burden should instead have been placed on the Government to show "by clear and convincing evidence that he is a danger to others or a flight risk" and that "no condition or combination of conditions will reasonably assure his future appearance and the safety of the community." (Pet. ¶¶ 13, 64.)

As an initial matter, this Court's authority to review the decision of the IJ is circumscribed by 8 U.S.C. § 1226(e), which provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." But while the ultimate decision whether to grant or deny bond is unreviewable, a habeas petitioner may challenge the legality of the "'statutory framework that permits the alien's detention without bail.'" *Jennings*, 138 S. Ct. at 841 (quoting *Demore*, 538 U.S. at 516). Put another way, this Court cannot review whether the IJ was correct in determining that Petitioner should be detained because he is dangerous, but it may review whether the IJ applied the correct legal standards in making that decision. *See Pensamiento v. McDonald*, 315 F. Supp. 3d 684 at 688–89 (D. Mass. 2018).

8

Section 1226(a) does not assign the burden of proof to either party in determining whether an alien should be detained on the ground that he poses a danger to the community. Neither the Eighth Circuit nor any other court in this District has squarely addressed who bears the burden of proof on this issue and what amount of evidence would satisfy that burden, *i.e.*, a preponderance of evidence or clear and convincing evidence.

Respondents argue that the alien bears the burden of proof at a custody redetermination hearing under § 1226(a) to prove he is not a flight risk or danger to the community. They cite *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), in support of their position. In *Guerra*, the BIA instructed that an alien in a § 1226(a) custody determination proceeding "must establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Id.* at 38 (citing *In re Adeniji*, 22 I. & N. Dec. 1102, 1112–13 (BIA 1999)). The BIA stated that the IJ may consider a number of factors in determining whether bond is appropriate and the amount of the bond:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 40.  Under *Guerra*, the IJ may choose to give greater weight to one factor, such as the alien's criminal record, over the other factors, so long as the decision is reasonable. *Id.*

In *Adeniji*, which was cited in *Guerra*, the BIA analogized the discretionary release of an alien by an arresting officer pursuant to 8 C.F.R. § 236.1(c)(8) to a redetermination hearing before an IJ pursuant to § 1226(a), and deemed the burden of proof set out in § 236.1(c)(8) applicable to the redetermination hearing.  *Adeniji*, 22 I. & N. Dec. at 1112.  Section 236.1(c)(8) provides in relevant part that:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

The BIA reasoned that "8 U.S.C. § 3.19(a) incorporate[d] substantive aspects of the bond regulations governing the Service" and authorized IJs to review custody and bond determinations, presumably including those made by an arresting officer.  *Adeniji*, 22 I. & N. Dec. at 1112.

Respondents argue that the BIA's interpretation of § 1226(a) in *Guerra* and *Adeniji* is entitled to *Chevron* deference because § 1226(a) is silent as to the burden of proof in an immigration bond hearing and the BIA reasonably construed § 1226(a) to incorporate the burden requirements of 8 C.F.R. § 236.1(c)(8).  But "whether or not *Chevron* deference applies to the BIA's interpretation of the statute, the issue before the Court is whether the Constitution requires the government to bear the burden of proof in

§ 1226(a) bond hearings." *Pensamiento*, 315 F. Supp. 3d at 693. "A *Chevron* argument about statutory interpretation does not change the constitutional analysis." *Id.* Indeed, the Supreme Court has determined "that an agency's interpretation of an ambiguous statute will not receive *Chevron* deference when the interpretation raises constitutional questions." *See Cisneros v. Napolitano*, No. 13-cv-700 (JNE/JJK), 2013 WL 3353939, at *8 (D. Minn. July 3, 2013) (citing *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 174 (2001)). Thus, while § 1226(a) may authorize Petitioner's detention according to the BIA's statutory interpretation, his detention must also comport with constitutional principles such as due process. *See Joseph v. Decker*, No. 18-cv-2640 (RA), 2018 WL 6075067, at *9 (S.D.N.Y. Nov. 21, 2018); *Pensamiento*, 315 F. Supp. 3d at 690.

The constitutionality of placing upon aliens the burden to prove when seeking bond under § 1226(a) that they are not a danger to the community has recently come under sustained questioning. *See, e.g.*, Mary Holper, *The Beast of Burden in Immigration Bond Hearings*, 67 Case W. Res. L. Rev. 75 (2016). One circuit court has concluded, notwithstanding § 236.1(c)(8) and *Adeniji*, that the federal constitution requires that "an alien is entitled to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (emphasis added) (quoting *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)); *accord Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Several district courts have held likewise. *See, e.g.*, *Darko v. Sessions*, No. 18-cv-5675 (ER), 2018 WL 5095671, at *5 (S.D.N.Y. Oct. 19, 2018) ("Given the important

11

constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the government to bear the burden, particularly in light of long-established Supreme Court precedent affecting the deprivation of individual liberty."); *Martinez v. Decker*, No. 18-cv-6527 (JMF), 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018); *Pensamiento*, 315 F. Supp. 3d at 690–93; *Haughton v. Crawford*, 221 F. Supp. 3d 712, 713–17 (E.D. Va. 2016).  *But see, e.g., Borbot v. Taylor*, Civ. No. 17-4646 (JLL), 2017 WL 3086225, at *3 (D.N.J. July 19, 2017) ("[I]n both a bond hearing, or bond redetermination, under § 1226(a) the alien must show that he is not a danger").

The Supreme Court's decision in *Jennings* sparked this recent jurisprudence.  In *Jennings*, the Supreme Court held that the Ninth Circuit adopted an implausible construction of § 1226(a) by relying on the canon of constitutional avoidance.  138 S. Ct. at 836.  The Ninth Circuit had "construed § 1226(a) to mean that an alien must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified."  *Id.* at 839.  The Supreme Court disagreed, remarking that the statutory language of § 1226(a) did not "even remotely support[]" the imposition of either periodic bond hearings every six months or a clear and convincing evidentiary standard on the government.  *Id.* at 847.  The Court acknowledged but did not answer, however, whether due process would require the imposition of such an evidentiary standard, and the Court remanded the case to the Ninth Circuit for consideration of the parties' constitutional arguments.  *See id.* at 851.

The Due Process Clause of the Fifth Amendment requires that "no person shall . . .

12

be deprived of life, liberty or property . . . without due process of law."  U.S. Const.
amend. V.  Because the Fifth Amendment forbids the government from depriving *any*
"person" of life, liberty or property without due process, citizens and noncitizens alike
are protected by its provisions.  *Mathews v. Diaz*, 426 U.S. 67, 78 (1976).  "Freedom
from imprisonment . . . lies at the heart of the liberty" protected by the Due Process
Clause.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2008).  "It is well established that the
Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno
v. Flores*, 507 U.S. 292, 306 (1993), and any detention must be reasonably related to the
purpose for which the individual was detained, *see Zadvydas*, 533 U.S. at 690 (citation
omitted).

In determining what process is due here, the Court finds instructive *Addington v.
Texas*, 441 U.S. 418 (1979).  There, the Supreme Court held that in a state civil
commitment proceeding, the government must prove by clear and convincing evidence
that an individual should be involuntarily committed to a mental hospital.  *Id.* at 433.
The Court considered "the extent of the individual's interest in not being involuntarily
confined indefinitely and the state's interest in committing the emotionally disturbed
under a particular standard of proof," as well as the risk of erroneous decisions.  *Id.* at
425 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  In light of the interests at
stake, the individual should not have "to share equally with society the risk of error when
the possible injury to the individual is significantly greater than any possible harm to the
state."  *Id.* at 427.  Because the individual's interest "is of such weight and gravity," the
Court concluded that due process required not only imposing the burden of proof on the

13

government, but also that the burden be one of clear and convincing evidence.  *Id.*

The Court also finds influential the burden of proof imposed by the Bail Reform Act.  The government must justify pretrial criminal detention on grounds of danger to the community by clear and convincing evidence.  18 U.S.C. § 3142(f) ("The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.").[2]  The Court agrees with Justice Breyer's observation that immigration detention and pretrial criminal detention "are in every relevant sense identical.  There is no difference in respect to the fact of confinement itself."  *Jennings*, 138 S. Ct. at 865 (Breyer, J., dissenting).  Indeed, Petitioner is being detained at the Freeborn County Jail, presumably under the same conditions as criminal detainees.

The Court concludes that the Due Process Clause requires the imposition of a clear and convincing evidentiary burden on the government at bond hearings held pursuant to § 1226(a).  The Supreme Court has plainly indicated "that due process places a heightened burden of proof on the State in civil proceedings" where the individual's interest is of particular importance and is more significant than a financial loss.  *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (citations omitted).  Here, an alien's liberty

---

[2]  The Court does not find particularly persuasive Petitioner's argument that the burden of proof is placed on the government in other aspects of immigration law, such as in 8 U.S.C. § 1229a(c)(3)(A), where the government must prove deportability by clear and convincing evidence, and 8 C.F.R. § 1240.8(c), where the government must prove alienage in removal cases.  Those burdens are established by statute, whereas § 1226(a) is silent.

interest in being free from not just prolonged detention, but any detention, is of particular importance and far more significant than a monetary loss. On the other hand, the government's interests in preventing danger to the community and ensuring the alien's appearance at future proceedings—though also important—carry less weight, particularly considering that individuals apprehended pursuant to § 1226(a) are non-criminal aliens who, if released on bond, would be subject to conditions designed to protect the government's interests.

Consequently, this Court joins the majority of courts who have weighed in on this issue to date in concluding that due process requires the government to prove by clear and convincing evidence that detention is justified at a § 1226(a) bond hearing. *E.g., Singh*, 638 F.3d at 1205; *Darko*, 2018 WL 5095671, at *6; *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1147 (N.D. Cal. 2018), *appeal dismissed*, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018); *Doe v. Smith*, No. 17-cv-11231-LTS, 2017 WL 6509344, at *8 (D. Mass. Dec. 19, 2017). *Cf. Pensamiento*, 315 F. Supp. 3d at 693–94 (shifting the burden to the government but not imposing a clear and convincing standard).

### C.    Prejudice

Respondents contend that even if placing the burden of proof on Petitioner was a fundamental error, Petitioner has not shown prejudice. To establish a due process violation, Petitioner must "demonstrate both a fundamental procedural error and that the error resulted in prejudice." *See Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003). Prejudice requires Petitioner to show "that the outcome of the proceeding may well have been different had there not been any procedural irregularities." *Tun v. Gonzales*, 485

F.3d 1014, 1026 (8th Cir. 2007).  In other words, Petitioner must identify an error that "potentially . . . affects the outcome."  *Id.*

In Petitioner's case, the IJ determined that he had not met his burden to show he was not dangerous in light of the seriousness of the crime of which he was convicted, its recency, and the 41-month sentence imposed.  (IJ Decision at 8 n.4.)  The nature of the crime was sexual penetration of a helpless person without consent.  (*Id.*)  The probable cause statement indicated that the victim woke up next to Petitioner and did not remember what had happened the night before.  (*Id.*)  She did not consent to sexual intercourse, but Petitioner's semen was detected from a vaginal swab.  (*Id.*)  Petitioner has no other prior criminal history.  (*Id.*)

Respondents maintain this information would have been made available to the IJ and the IJ would have viewed the strength of the evidence in the same way, regardless of which party had the burden of proof.  Respondents cite *Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11 (D. Mass. 2017), in support of their position that the Court may reject Petitioner's due process argument for lack of prejudice.  In *Maldonado-Velasquez*, the petitioner had been apprehended at least four times and faced nine charges including "carrying a dangerous weapon, carrying a dangerous weapon on school grounds, possession of a controlled substance, possession of ammunition, and assault with a dangerous weapon."  *Id.* at 13.  The IJ specifically found this history indicated a continuous disrespect for the law and raised concerns that the petitioner posed a danger to the community.  *Id.*

Here, the nature of the crime does raise concerns that Petitioner may present a

16

danger to the community. This is tempered, however, by the absence of any other criminal history, which distinguishes Petitioner from the petitioner in *Maldonado-Velasquez*. The Court cannot assume that if the IJ had applied a standard that imposed a clear and convincing evidentiary burden on the government, the IJ would still have concluded Petitioner must be detained on grounds of danger to the community. Put another way, the outcome of the custody redetermination hearing may well have been different if the burden required by due process had been imposed on the government. Consequently, Petitioner has adequately demonstrated prejudice.

### D.    Petitioner's Fourth Amendment Claim

Petitioner contends his detention violates the Fourth Amendment. (Pet. ¶ 66.) The Court has jurisdiction over this constitutional claim, but Petitioner has not shown that he would be entitled to more relief under the Fourth Amendment than under the Due Process Clause. *See Muse*, 2018 WL 4466052, at *1 n.1. The Court therefore recommends that the Fourth Amendment claim be denied as moot. *Id.*

### E.    The Administrative Procedures Act Claim

Petitioner contends the IJ's decision to deny him bond was arbitrary and capricious because the IJ impermissibly placed the burden of proof on him, considered unproven allegations as dispositive, and disregarded his evidence. (Pet. ¶ 73.) With respect to the burden of proof, the Court's findings and conclusions above resolve this claim. As to the IJ's consideration of the allegations and evidence, Petitioner never expanded on this summary allegation and the Court considers it waived.

### F.    Petitioner's Motions

Petitioner filed a motion for a preliminary injunction and a motion to expedite the order to show cause.  The Court recommends that the motion to expedite a show-cause order be denied as moot, because the Court had already issued an order to show cause before the motion to expedite was filed.  (*See* Order, June 3, 2018 [Doc. No. 3].)

In the motion for a preliminary injunction, Petitioner asks the Court to enjoin Respondents from violating his Fifth Amendment rights to due process and liberty.  The relief recommended herein renders that aspect of the motion moot.  Petitioner also asks the Court to stay or "administratively close" his immigration case.  The Court does not have jurisdiction to grant that relief.  (*See* R. & R. at 3–4, Aug. 9, 2018 [Doc. No. 21]; Order adopting R. & R., Sept. 17, 2018 [Doc. No. 30].)

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  The Second Amended Petition for Writ of Habeas Corpus [Doc. No. 35] be **GRANTED IN PART** and **DENIED IN PART**, in that if the District Court adopts this Report and Recommendation, an immigration judge must provide Petitioner with a custody hearing pursuant to § 1226(a), within thirty days of the District Court's order, at which the government must prove by clear and convincing evidence that Petitioner's detention is necessary because he is dangerous or a flight risk.

2.  Petitioner's Motion for Emergency Preliminary Injunction [Doc. No. 17] be

**DENIED IN PART for lack of jurisdiction** and **DENIED IN PART as moot**;

and

3. Petitioner's Motion to Expedite Order to Show Cause [Doc. No. 18] be **DENIED AS MOOT**.


Dated: January 7, 2019              _s/ Hildy Bowbeer_____
                                    HILDY BOWBEER
                                    United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).